# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00776-CV

**Janice Su Allen, Individually and as Trustee of the Eagle Pass Living Trust, Appellant**

**v.**

**James Irwin, Appellee**

### FROM THE 261ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-16-001369, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Janice Su Allen, individually and as trustee of the Eagle Pass Living Trust, appeals a trial court judgment granting James Irwin's request for specific performance of a real estate contract pursuant to which James Anglim agreed to convey to him property located in Travis County. We will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 23, 2015, Irwin and Anglim executed a Texas Association of Realtors form Commercial Contract-Improved Property (the Irwin Contract) pursuant to which Anglim agreed to sell and convey to Irwin property located at 3717 North Ranch Road 620 in Travis County (the Property). The contract contained the following provision:

> Feasibility Period: Buyer may terminate this contract for any reason within 90 days after the effective date (feasibility period) by providing Seller written notice of termination.

The Irwin contract was first escrowed at First American Title Company, and Irwin placed $1,000 as earnest money in escrow with that title company. Later, Irwin changed title companies and escrowed the Irwin Contract at Independence Title Company, placing $1,000 as earnest money in escrow with that title company. Additionally, Irwin paid $1,000 directly to Anglim.

In January 2016, during the Irwin Contract's feasibility period, Anglim and Allen, as representative of the Eagle Pass Living Trust, entered into a contract to sell the Property to Allen, acting for the Trust (the Allen I Contract). The Allen I Contract was escrowed at Gracy Title Company. When Allen executed the Allen I Contract, she knew of the Irwin Contract.[1]

On January 25, 2016, Anglim signed a Commercial Contract Termination Notice, which a realtor acquaintance of Allen's had prepared, in which Anglim purported to terminate the Irwin Contract. Allen delivered the Termination Notice to Independence Title Company that day. A representative of Independence Title Company then called Irwin to tell him that Allen had brought in the Termination Notice and further reported that Allen was upset when she was told that the Termination Notice was not effective because Irwin had not signed it. On January 26, Irwin discovered that the Allen I Contract had been escrowed at Gracy Title Company. Irwin informed Gracy Title Company of the previously executed Irwin Contract. Irwin's attorney also

---

[1] Although Allen initially disputed having this knowledge, testimony at trial showed that Allen had learned of the Irwin Contract through discussions with Anglim when she expressed interest in buying the Property from him. There was evidence that Anglim facilitated a meeting between Irwin and Allen in early January at which time Irwin told Allen he had a contract on the Property and that if she wanted to purchase it she would have to buy it from him. Irwin testified that he called Allen the next day to reiterate to her that he had a contract on the Property, that the option period had passed, and that if she had any interest in buying the Property she should talk to him. The trial court expressly found that Allen had actual awareness of Irwin's contractual right to buy the Property when she executed both the Allen I Contract and, subsequently, the Allen II Contract.

2

sent Gracy Title Company a letter informing it of the Irwin Contract. The next day, Gracy Title Company informed Allen that Irwin had a prior contract to purchase the Property from Anglim.

On February 3, 2016, Anglim and Allen, as representative of the Trust, executed a second contract whereby Anglim agreed to sell the Property to Allen, as representative of the Trust (the Allen II Contract). The Allen II Contract was escrowed at Austin Title Company. On February 29, the transaction closed, and Anglim executed a Warranty Deed conveying the Property to the Trust. The Warranty Deed was recorded in the Travis County Public Deed Records on March 3.

In mid-March 2016, Irwin demanded that Anglim and Allen, for the Trust, specifically perform the Irwin Contract and convey the Property to him pursuant to its terms.[2] Irwin also filed a lis pendens in the Travis County Public Deed Records. Allen did not respond to this demand. Irwin again demanded, in January 2017, that Allen, for the Trust, specifically perform the Irwin Contract and convey the Property to him pursuant to its terms. Again, Allen did not respond to this demand.

Irwin then sued Anglim and Allen, individually and as trustee of the Trust, in Travis County district court asserting causes of action for breach of contract and tortious interference with contract. Irwin also sought declarations that the Irwin Contract was a valid and enforceable contract and that Anglim and Allen were legally obligated to convey the Property to Irwin pursuant to that contract. Irwin sought an order compelling specific performance of the Irwin Contract.[3] Irwin also sought to recover attorneys' fees and costs from Anglim and Allen.

---

[2] This demand was made within the feasibility period of the Irwin Contract.

[3] In the alternative, Irwin sought damages for breach of the Irwin Contract.

Irwin filed a motion for partial summary judgment on his breach of contract claim seeking specific performance of the Irwin Contract by Anglim and Allen. Irwin contended that, as a matter of law, he was entitled to specific performance of the Irwin Contract because he was willing and able to perform and had complied with his contractual obligations, and any failure to tender performance on his part was excused by Anglim's repudiation of the Irwin Contract. Irwin argued that because Allen purchased the Property with full knowledge of his rights under the Irwin Contract, he could enforce specific performance against her, and Allen was therefore legally obligated to convey the Property to him. Allen filed a response to the motion for summary judgment in which she asserted that Irwin could not assert a breach of contract claim against her seeking specific performance because Allen was not a party to any contract with Irwin. Allen also filed special exceptions and a motion to dismiss on the same ground. The trial court overruled Allen's special exceptions and denied her motion to dismiss. The trial court granted Irwin's motion for partial summary judgment on his claims against Anglim[4] but denied it as to his claims against Allen.

Allen amended her petition to assert affirmative defenses of failure to mitigate, waiver and estoppel, and privilege or justification. She also asserted counterclaims of trespass to try title and suit to quiet title. Irwin and Allen then both filed additional motions for summary judgment. The trial court denied Irwin's and Allen's motions for summary judgment on the breach of contract claim because, although the court found that Irwin had stated a cause of action against Allen for breach of contract, it found that there was a disputed fact issue as to

---

[4] The trial court found that Anglim breached the Irwin Contract.

Allen's knowledge of the Irwin Contract.[5] The trial court found that the affirmative defense of justification and privilege did not apply to Irwin's claim of breach of contract and granted Irwin's motion for summary judgment on that affirmative defense.[6] The trial court found that Allen's affirmative defense of failure to mitigate did not apply to Irwin's request for specific performance, but that it did apply to Irwin's alternative request for relief of damages. Because Allen voluntarily withdrew her affirmative defenses of waiver and estoppel, the trial court dismissed Irwin's motion related to those defenses as moot.

By the time of trial, Irwin had been granted an interlocutory summary judgment that Anglim breached the Irwin Contract, and the trial court had rejected Allen's affirmative defenses to Irwin's claims against her. At trial, the parties stipulated, among other things, that Allen knew of the Irwin Contract when she executed the Allen II Contract. After conducting a bench trial, the trial court rendered judgment awarding Irwin the relief he sought. Specifically, the court granted Irwin's request for specific performance of the Irwin Contract and decreed that, as of the date of the final judgment after the trial, Irwin became the owner of the Property. The trial court further ordered that the judgment in the case could be filed in the Real Property Records of Travis County to serve as a muniment of Irwin's title.[7] The court also ordered that Irwin recover from Anglim and Allen, jointly and severally, $144,176.37 in attorneys' fees and expenses pursuant to Texas Civil Practice and Remedies Code chapter 38 and section 37.009.

---

[5] As previously noted, this fact issue was resolved at trial; the trial court found that Allen did have such knowledge before she executed both the Allen I Contract and the Allen II Contract.

[6] The trial court found that justification and privilege were valid affirmative defenses to Irwin's tortious interference claim. Irwin nonsuited that claim prior to trial.

[7] The trial court expressly found that the Eagle Pass Living Trust was the owner of the Property on August 21, 2017, the start date of the trial.

*See* Tex. Civ. Prac. & Rem. Code §§ 37.009 (in proceeding under Uniform Declaratory Judgments Act, court may award costs and reasonable and necessary attorneys' fees as are equitable and just); 38.001-.006 (providing recovery of attorneys' fees for breach of contract claim). At Allen's request, the trial court filed findings of fact and conclusions of law. *See* Tex. R. Civ. P. 296. Among other things, the trial court found that Allen "did not act in good faith in any aspect of the transactions" to purchase the Property. Allen then perfected this appeal, bringing thirteen discrete issues challenging various pre-trial orders and aspects of the trial court's judgment.

## DISCUSSION

In her first issue, Allen asserts that the trial court erred when it denied her motion for summary judgment based on her affirmative defense that section 22.001 of the Texas Property Code barred Irwin's breach of contract and declaratory judgment claims. *See* Tex. Prop. Code § 22.001 ("A trespass to try title action is the method of determining title to lands, tenements, or other real property."); *Martin v. Amerman*, 133 S.W.3d 262, 265-67 (Tex. 2004); *see also* Tex. Civ. Prac. & Rem. Code § 37.004(c) (declaratory judgment is available when "sole issue concerning title to real property is the determination of the proper boundary line between adjoining properties"). Allen argues that a trespass to try title claim is "the exclusive mechanism for resolving competing claims to title."

A trespass to try title suit is appropriate when two parties claim competing title to a piece of real property. Such a suit seeks to clear problems in chains of title or to enable an owner with a right to *immediate* possession of the property to recover possession of land being withheld. *Martin*, 133 S.W.3d at 265; *I-10 Colony, Inc. v. Chao Kuan Lee*, 393 S.W.3d 467, 475 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). In the present case, the gravamen of Irwin's

6

claim was to enforce the Irwin contract, not to resolve a dispute over who had title to the Property.[8] The dominant purpose of Irwin's suit was to enforce a contract for the sale of the Property and then to secure delivery of a deed conveying title to the Property to him. A proceeding brought to secure a conveyance of property is different from a suit to recover land unlawfully withheld from a person entitled to immediate possession. Although the latter claim must be brought as a trespass to try title action, the former is a breach of contract claim and suit for specific performance. *See Robinson v. O'Keefe*, 107 S.W.2d 419, 421 (Tex. App.—Galveston 1937, no writ) (when object of suit by purchaser is to enforce contract for its sale and delivery of title for land, suit is not for trespass to try title for specific performance of contract). The trial court did not err in denying Allen's motion for summary judgment on the ground that section 22.001 of the Texas Property Code barred Irwin's claims. We overrule Allen's first issue.

In her second issue, Allen asserts that the trial court erred in denying her motion to dismiss Irwin's request for declaratory relief. Allen claimed that Irwin's attorney "stipulated and judicially admitted [] that [Irwin] was no longer seeking a declaration that [he] was the true title owner." Allen maintains that, by dropping a request to be declared the "true title owner" to the property, Irwin "waived" his request for declaratory relief. Allen has, however, mischaracterized the nature of Irwin's request for declaratory relief and the representations and stipulations he made to the trial court. Irwin's pleadings did not seek a declaration that he

---

[8] As Allen emphasizes in her brief, Irwin never disputed and, in fact, judicially admitted that when he filed suit, the Trust held title to the Property. In her motion for summary judgment Allen asserted that "Defendant Allen has title to the [Property]. [Irwin] wants it." Thus, by Allen's own admission, this case is not a dispute brought by a party claiming to have the present right to possess property but, rather, by a party seeking to enforce a contract that would convey that right to him. Because Irwin did not claim to have title to the Property, he could not have maintained a trespass to try title action. *See Ramsey v. Grizzle*, 313 S.W.3d 498, 505 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("To maintain an action of trespass to try title, the person bringing the suit must have title to the land sought to be recovered.").

7

presently held title to the Property. Rather, Irwin sought declarations that the Irwin Contract was valid and enforceable, that Anglim and Allen were both legally obligated *to convey* the Property to Irwin, and that any actions Allen took regarding the Property and its tenants were unenforceable or constituted a breach of the Irwin Contract. Irwin never sought a declaration that he held title to the Property at the time of trial. Consistent with the allegations in his pleadings, Irwin testified that he did not hold title to the Property. Also consistent with the pleadings, counsel for Irwin repeatedly stated to the trial court that the purpose of the suit was to prove that the Irwin Contract had been breached and to compel Allen to convey to Irwin title to the Property, which she had obtained on behalf of the Trust when the Allen II Contract closed. The trial court did not err in denying Allen's motion to dismiss Irwin's declaratory judgment claim. Allen's second issue is overruled.

In her third issue, Allen asserts that the trial court erred by "issuing a judgment declaring [Irwin] to be the true title owner" when the pleadings did not support such a judgment. Allen argues that (1) such a judgment could only be made in a trespass to try title action, which Irwin did not bring, and (2) Irwin "waived" any claim to a declaration that he had title to the Property when he confirmed to the trial court that he did not claim to have title to the Property. The trial court did not, however, declare that Irwin had title to the Property when the trial began. In fact, the court expressly found that, when the trial began, the Trust had title to the property. The trial court then granted Irwin's request for specific performance of the Irwin contract, which had been breached when Anglim closed on the Allen II Contract and executed a warranty deed that conveyed the Property to Allen. As a result of granting the request for specific performance, the trial court ordered that, on the date of the final judgment, Irwin became the owner in fee

8

simple of the Property and the final judgment could be filed in the Real Property Records of Travis County as a muniment of that title.

Allen's argument ignores the temporal aspect of the trial court's judgment; the trial court's order that "Irwin is the owner in fee simple of the Property" was the result of its conclusion that, as Irwin alleged, he was entitled to specific performance of the Irwin Contract. Irwin's pleadings did not allege that he held title to the Property, and he did not ask the trial court to declare that he did. Rather, Irwin alleged that he was *entitled* to have the record owner convey the Property to him and sought a declaration that Allen was legally obligated to convey the Property. The trial court's orders contained in the final judgment are consistent with the relief sought. We overrule Allen's third issue. Relatedly, we overrule Allen's fourth issue in which she contends the trial court erred by "declar[ing] Irwin to be the true title owner" of the Property in light of Irwin's admission that, before trial, he did not hold title to the Property and because Irwin did not present at trial a warranty deed conveying the Property to him. Again, Allen has mischaracterized the trial court's finding that, as of the date of trial, the Trust held title to the Property and its conclusion that Irwin was entitled to specific performance of the Irwin Contract, resulting in his becoming, through the trial court's order, the fee simple owner of the Property.

In her fifth and sixth issues, Allen challenges the trial court's alleged failure to make findings of fact regarding her trespass to try title counterclaim. Allen sought a declaration that the Trust held title to the Property and contends that the court's failure to find that she had title to the Property was against the great weight and preponderance of the evidence. As an initial matter, the trial court found that Allen had title to the Property on the date the trial commenced. It also concluded, however, that Anglim breached the Irwin Contract and that Irwin was entitled to specific performance of that contract, which would operate to transfer title to him.

9

Having concluded that Irwin was entitled to specific performance of the Irwin contract, the trial court did not err in finding that, after trial and rendition of its order granting Irwin's request for specific performance, Allen no longer continued to hold title to the Property. The trial court did not err in denying Allen's motion for entry of judgment for her on her trespass to try title counterclaim. Allen's fifth and sixth issues are overruled. We overrule Allen's twelfth issue in which she contends that the trial court erred in failing to make findings and conclusions on her claim that Irwin placed a cloud on her title and by denying her motion for judgment on her counterclaim seeking to quiet title. Having properly concluded, as explained further below, that Allen was required to convey the Property to Irwin, the trial court properly denied Allen's request for a judgment in her favor in her suit to quiet title. *See Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 387-88 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (suit to quiet title relies on invalidity of defendant's claim to property).

In her seventh issue, Allen argues that the trial court erred by denying Allen's motion to dismiss Irwin's breach of contract claim against her based on the fact that there was no contract between her and Irwin. Allen also asserts that the trial court erred in ordering her to specifically perform a contract to which she was not a party—the Irwin Contract. The trial court made the following findings of fact regarding the Irwin Contract:

> FOF 2: Anglim breached the Irwin Contract.
>
> FOF 12: Irwin is seeking the remedy of specific performance.
>
> FOF 13: Had Anglim not transferred the legal title to [the Property] to the Trust, specific performance of the Irwin Contract could have been granted by the Court against Anglim.
>
> FOF 14: The lack of a contractual relationship between Irwin and Allen, individually and on behalf of the Trust, does not foreclose the equitable remedy of specific performance of the Irwin Contract against the Trust.

10

FOF 15: Irwin is entitled to the equitable remedy of specific performance against the Trust.

FOF 16: Allen, on behalf of the Trust, must convey [the Property] to Irwin subject to the terms and conditions of the Irwin Contract.

Thus, the trial court expressly found that Anglim, not Allen, breached the Irwin Contract and, consequently, any alleged error in failing to dismiss a breach of contract claim against her did not constitute reversible error. *See* Tex. R. App. P. 44.1 (judgment may not be reversed on appeal on ground that trial court made error of law unless error complained of probably caused rendition of improper judgment).[9] With respect to her claim that the trial court erred in ordering her specific performance of the Irwin Contract, we disagree. The law is settled: one who purchases real property with actual knowledge of a valid prior sales contract steps into the shoes of the seller in the prior contract, in this case Anglim. *See Langley v. Norris*, 173 S.W.2d 454, 455 (Tex. 1943). The Texas Supreme Court held:

> One who, with knowledge, actual or constructive, of the executory contract acquires the legal title under or through a deed or mortgage executed by the vendor subsequently to an executory contract for the sale of the land . . . may be compelled, at the suit of the vendee under the executory contract, to perform the contract by conveying the legal title, if the conditions are such that such relief could have been granted against the vendor if he had not transferred the legal title.

*Id.* at 457. It was undisputed that Allen, for the Trust, acquired title to the Property through a deed executed by Anglim subsequent to the Irwin Contract. The trial court found that the Irwin Contract was valid and enforceable and that Anglim had breached it. The trial court found that, absent the transfer of title to the Property to the Trust, it could have granted specific performance of the Irwin Contract against Anglim. Thus, based on the supreme court's holding in *Langley*,

---

[9] The trial court also found that Irwin was not entitled to attorneys' fees against Allen for breach of contract.

11

the trial court could compel Allen, as trustee of the Trust and as a party with actual knowledge of the Irwin Contract who acquired the Property for the Trust after the Irwin Contract was executed, to perform the Irwin Contract and convey the Property to Irwin. We overrule Allen's seventh issue. For the same reasons, we overrule Allen's tenth issue, in which she argues that the trial court should not have overruled the special exceptions she filed seeking dismissal of Irwin's claims for failure to state a cause of action for which relief could be granted.

In her eighth issue, Allen asserts that the trial court erroneously issued internally inconsistent rulings by (1) ordering Allen to perform a contract and (2) finding that Irwin "was already the true title owner of [the Property]." As already explained, the trial court found that *as of the date of trial*, Allen held title to the Property and, having concluded that the Irwin Contract was valid and enforceable, ordered Allen to perform it, consistent with Texas Supreme Court precedent. *See id.* These rulings are not inconsistent and do not constitute error by the trial court. Allen's eighth issue is overruled.

In her ninth issue, Allen argues that the trial court erred in denying her motion to dismiss Irwin's declaratory judgment claim when the evidence was undisputed that there was no contract between Irwin and Allen. Allen argues that, because there was no direct contract between Irwin and her, there was no justiciable controversy that could support an action under the Uniform Declaratory Judgments Act. *See* Tex. Civ. Prac. & Rem. Code §§ 37.001-.011 (UDJA). Allen argues that the UDJA only authorizes the court to issue a declaration about "a written contract or other writings constituting a contract or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract, or franchise." *See id.* § 37.004(a). However, the subjects enumerated in UDJA section 37.004 are not exclusive, as the statute plainly states:

12

> The enumerations in Sections 37.004 and 37.005 do not limit or restrict the exercise of the general powers conferred in this section in any proceeding in which declaratory relief is sought and a judgment or decree will terminate the controversy or remove an uncertainty.

Tex. Civ. Prac. & Rem. Code § 37.003; *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 468 (Tex. 1995). The authority to grant a declaratory judgment flows from the "general powers" of the courts to enter a declaratory judgment under the UDJA. *Bonham*, 907 S.W.2d at 468.

The UDJA is "remedial" and its purpose is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Tex. Civ. Prac. & Rem. Code § 37.002(b). The statute is "to be liberally construed and administered." *Id.* The UDJA does not supplant preexisting remedies but is intended as a speedy and effective method for the determination of the rights of parties when a real controversy has arisen. *Cobb v. Harrington*, 190 S.W.2d 709, 713 (Tex. 1945); *Bexar-Medina-Atascosa Ctys. Water Control & Imp. Dist. No. 1 v. Medina Lake Prot. Ass'n*, 640 S.W.2d 778, 779 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.) (purpose of statute was to provide procedural device whereby litigants could obtain judicial determination of controversy). Here, there was a real controversy between Irwin and Allen as to whether Allen, a party who purchased the Property with knowledge of the preexisting Irwin Contract, was legally obligated to convey the Property to Irwin. Irwin's having prevailed on his claim for breach of contract against Anglim did not end that controversy. The favorable judgment on that claim allowed Irwin to enforce the Irwin Contract against Anglim, but specific performance against Allen was available only on Irwin's showing that Allen purchased the property from Anglim knowing of the Irwin Contract. Allen disputed that Irwin could compel her to perform the Irwin Contract before and during trial and continues to dispute that issue on appeal. Plainly, a justiciable controversy existed between Irwin and Allen that

13

warranted relief under the UDJA. *See EWB-I, LLC v. PlazAmericas Mall Tex., LLC*, 527 S.W.3d 447, 471 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (declaratory judgment appropriate if justiciable controversy exists that concerns rights and status of parties and is resolvable by declaration sought). We overrule Allen's ninth issue.

In her eleventh issue, Allen challenges the trial court's determination that the Irwin contract had not been terminated prior to Anglim's conveyance of the Property to the Trust. Relevant to this issue, the trial court made the following findings of fact and conclusions of law:

> FOF 14: On January 15, 2016, a Commercial Contract Termination Notice ("Termination Notice") was signed by Anglim. On the same date, Allen delivered the Termination Notice to Independence Title.
>
> COL 9: There was no agreement between Anglim and Irwin to terminate the Irwin Contract.
>
> COL 10. Anglim's Notice of Termination was not accepted by Irwin.
>
> COL 11: The Irwin Contract was not terminated.

On appeal, Allen argues that the trial court's conclusion that the Irwin Contract was not terminated was error.[10] Allen asserts that Anglim's signing the Notice of Termination, what she terms "unilateral termination," was sufficient to terminate the contract, leaving Irwin with no remedy through either specific performance or damages. Allen relies on the Texas Supreme Court's opinion in *Glass v. Anderson*, 596 S.W.2d 507 (Tex. 1980), for the proposition that Anglim's repudiation of the contract by refusing to close the transaction on an agreed upon date within the feasibility period resulted in its termination. In *Glass,* however, the supreme court

---

[10] The trial court's conclusions of law are reviewed de novo. *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996).

addressed whether a buyer who had twice repudiated a contract for the sale of real property could maintain his right to specific performance of the contract. *Id.* at 507. The court held that "when the buyer repudiates the contracts after time for performance arrives, the contractual obligations of the non-defaulting party [seller] are ended, and the repudiating party cannot obtain specific performance of the contracts." *Id.* at 508. Thus, had *Irwin* repudiated the contract, such repudiation might have terminated his right to enforce the contract.[11] Here, however, Irwin was the non-repudiating party attempting to enforce a contract for sale of real property that the seller had repudiated. *Glass* does not apply to the facts of this case. The trial court correctly concluded that the Irwin Contract was not terminated. We overrule Allen's eleventh issue.

In her thirteenth issue, Allen asserts that the trial court erred in awarding Irwin attorneys' fees because "there is no statutory basis for this award." Allen argues that Irwin "lost on his contract claim when he abandoned it at trial," and therefore that he was not entitled to recover fees. *See* Tex. Civ. Prac. & Rem. Code §§ 38.001-.006. As noted above, Irwin did not abandon his breach of contract claim against Anglim. Instead, Irwin prevailed on that claim and was eligible to recover attorneys' fees for that claim. Moreover, the trial court expressly found that Irwin could not recover from Allen attorneys' fees for breach of contract.[12] In this issue Allen also contends that "when this court reverses the trial court's judgment on the declaratory judgment claim, Allen will be the 'prevailing party'" and will herself be entitled to an award of attorneys' fees under the UDJA. Having found the trial court's judgment proper in all respects,

---

[11] If Irwin had repudiated the contract, Anglim could have accepted that repudiation and sold the property to Allen.

[12] The trial court also found that the attorneys' fees related to Irwin's claims under the UDJA and those related to his breach of contract claim were too intertwined to segregate. This finding is unchallenged on appeal.

15

we do not address Allen's claim to be entitled to an award of attorneys' fees under the UDJA. We overrule Allen's thirteenth issue.

## CONCLUSION

Having overruled each of Allen's thirteen issues on appeal, we affirm the trial court's judgment.

_____

Thomas J. Baker, Justice

Before Justices Baker, Triana, and Smith

Affirmed

Filed:   June 5, 2019

16